**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

DRAX BIOMASS, INC.,

    Plaintiff,

              v.

RICHARD LAMB,

    Defendant.

Civil Action No.
1:20-cv-04727-SDG

**OPINION AND ORDER**

This matter is before the Court on Defendant Richard Lamb's motion to dismiss or transfer [ECF 7]. For the following reasons, Lamb's motion to transfer is **GRANTED**.

**I.**  **INTRODUCTION**

Plaintiff Drax Biomass, Inc. (Drax) is a manufacturer of compressed wood pellets.[1] On approximately May 24, 2016, Drax offered Lamb employment as its Plant Manager, conditioned on him executing a Confidentiality and Non-Compete Agreement (the Non-Compete Agreement).[2] As part of this agreement, Lamb agreed that he would not perform the same, or substantially the same, job duties for a competitor in the United States or Canada for six months after termination of

---

1    ECF 1, ¶ 4.

2    *Id.* ¶ 12; ECF 1-1 (Non-Compete Agreement).

his employment.³ After a series of promotions, Lamb eventually became the Vice President of Operations at Drax.⁴

On May 28, 2020, Drax terminated Lamb's employment.⁵ At that time, Drax offered Lamb a Separation Agreement;⁶ in exchange for its execution, Drax agreed to continue paying Lamb his salary at the time of his termination date for a period of six months.⁷ According to Drax, it recently learned that Lamb is now the Director of Operations for Alabama Pellets, which is a direct competitor of Drax.⁸ Drax alleges Lamb's employment with Alabama Pellets constitutes a violation of the non-compete restrictive covenant found in the Non-Compete Agreement and Separation Agreement.⁹

---

3   ECF 1, ¶ 14; ECF 1-1, ¶ 4 § 2.

4   ECF 1, ¶ 1.

5   *Id.* ¶ 17.

6   Although Drax did not attach the Separation Agreement to its Complaint, in resolving the present issues, the Court may properly consider the version Lamb attached to his motion to dismiss. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) ("[T]he court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed.") (citing *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002)).

7   ECF 1, ¶¶ 18–19.

8   *Id.* ¶¶ 21–22.

9   *Id.* ¶ 22.

Drax initiated this suit on November 19, 2020, asserting two breach of contract claims against Lamb premised on the separate agreements.[10] Lamb filed his motion to dismiss on December 18.[11] Drax filed a response in opposition on January 15, 2021.[12] Lamb filed his reply on January 29.[13]

## II.   DISCUSSION

Lamb argues Drax's Complaint must be dismissed for three independent reasons: (1) the value of the alleged claims does not meet the amount in controversy; (2) the claims must be adjudicated in Louisiana, not Georgia; and (3) the non-compete restrictive covenant is overbroad and unenforceable. Since Lamb's argument as to the amount in controversy challenges the Court's subject matter jurisdiction, it must be addressed first. *See Taylor v. Appleton*, 30 F.3d 1365, 1366 (11th Cir. 1994) ("[A] court must first determine whether it has proper subject matter jurisdiction before addressing the substantive issues.").

---

[10]   *See generally* ECF 1.

[11]   ECF 7.

[12]   ECF 11.

[13]   ECF 17.

### A.     Amount in Controversy

Federal courts possess limited jurisdiction. *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). A federal district court has "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States." 28 U.S.C. § 1332. *See also Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001) ("Diversity jurisdiction exists where the suit is between citizens of different states and the amount in controversy exceeds the statutorily prescribed amount, in this case $75,000."). Lamb does not challenge the complete diversity element; Drax alleges it is a citizen of Delaware and Louisiana and that Lamb is a citizen of Alabama.[14] Lamb instead contends the real value of Drax's claims does not satisfy the amount in controversy requirement.

Motions to dismiss for lack of subject matter jurisdiction brought under Federal Rule of Civil Procedure 12(b)(1) come in two forms: "facial" and "factual" challenges. *Lawrence v. Dunbar*, 919 F.2d 1525, 1528 (11th Cir. 1990).

> A "facial attack" on the complaint requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion. "Factual attacks," on the other

---

[14]   ECF 1, ¶¶ 5–6.

> hand, challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits are considered. . . . [T]he district court has the power to dismiss for lack of subject matter jurisdiction on any of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.

*McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007) (citations and punctuation omitted).

Pursuant to a "facial attack," the amount in controversy is generally satisfied if the plaintiff "claim[s] a sufficient sum in good faith." *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938) ("[T]he sum claimed by the plaintiff controls if the claim is apparently made in good faith.")). To justify dismissal, "it must appear to a legal certainty that the claim is really for less than the jurisdictional amount." *McKinnon Motors*, 329 F.3d at 807 (citing *Red Cab*, 303 U.S. at 288). *See also Leonard v. Enterprise Rent a Car*, 279 F.3d 967, 972 (11th Cir. 2002).

In Count I of the Complaint, Drax alleges it "has suffered monetary damages in excess of $75,000" stemming from Lamb's alleged breach of the Non-Compete

Agreement.[15] And in Count II, although Drax does not articulate a precise dollar amount, it alleges it paid Lamb approximately $82,000 as part of the Separation Agreement, which Drax subsequently alleges Lamb breached.[16] Drax also expressly seeks an award of attorneys' fees.[17]

Lamb couches his argument against jurisdiction as a "factual attack." First, he contends Drax has not submitted evidence that "identif[ies] any lost customers, misappropriated information, or other sources of harm" demonstrating that it has suffered any damages resulting from Lamb's alleged breach of the Non-Compete Agreement.[18] Second, Lamb submits (1) the Separation Agreement itself and (2) his declaration stating that he has only received a total of $65,932.33 from Drax as part of that agreement. According to Lamb, this extrinsic evidence demonstrates that the true value of Drax's claims falls below the amount in controversy.

The Court does not agree. As to Count I, Drax may seek monetary damages for Lamb's alleged breach of his non-compete. *Direct Response Prod., Inc. v. Thomas*,

---

[15]  *Id.* ¶ 30.

[16]  *Id.* ¶¶ 32–33.

[17]  *Id.* ¶ 34(5).

[18]  ECF 7-1, at 10.

No. 1:13-cv-1526-WSD, 2013 WL 5890473, at *3 (N.D. Ga. Nov. 1, 2013); *Bearoff v. Craton*, 350 Ga. App. 826, 839 (2019).

> In Georgia, the damages recoverable for breach of a restrictive covenant are lost profits as well as the loss of customers, the loss of employees, and the decreased value of the business property purchased in reliance on the covenant. Indeed, it has been stated that recoverable damages are simply all damages incident to the breach.

*Direct Response*, 2013 WL 5890473, at *3 (collecting cases).

Lamb does not submit extrinsic evidence disputing Drax's allegation that it has suffered in excess of $75,000 from the alleged breaches. Rather, Lamb challenges whether Drax will ultimately *prove* damages in excess of $75,000. But there is no indication the amount at issue has not been requested in good faith. And Lamb does not show to a "legal certainty" that the amount in controversy is not satisfied. This is enough to reject Lamb's argument. *See, e.g., IPC Sys., Inc. v. Garrigan*, No. 1:11-cv-3910-AT, 2012 WL 12872028, at *1 (N.D. Ga. May 21, 2012) (finding general jurisdiction allegations that "the amount in controversy exceeds $75,000" and "Defendant's improper activities have . . . caused substantial damages . . . far and in excess of $75,000" sufficient to establish amount in controversy).

Even accepting Lamb's attack as a "factual" one does not change the result. To be sure, Lamb points to extrinsic evidence (*i.e.*, his declaration) that he only

received $65,932.33 under the Severance Agreement. However, Drax may aggregate that amount with its alleged damages under Count I. *See, e.g., Snyder v. Harris*, 394 U.S. 332, 335 (1969) (aggregation is permitted "in cases in which a single plaintiff seeks to aggregate two or more of his own claims against a single defendant"). Further, Drax seeks an award of attorneys' fees premised on Lamb's alleged breach of the Non-Compete Agreement. In the Eleventh Circuit, "attorneys' fees do not count towards the amount in controversy unless they are allowed for by statute or contract." *McKinnon Motors*, 329 F.3d at 808 n.4. Section 5 of the Non-Compete Agreement expressly states that Lamb "shall be liable for [Drax's] attorneys' fees in the event that [Drax] is successful in bringing or defending against any action brought pursuant to this Agreement."[19] Considered cumulatively, the Court is satisfied that Drax's alleged damages are enough to meet the amount in controversy. *Cf. Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1062 (11th Cir. 2010) ("[C]ourts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements."). Lamb's motion to dismiss on amount in controversy grounds is denied.

---

19   ECF 1-1, at 8 § 5.

### B.     The Forum Selection Clauses

Lamb next argues this case must be dismissed or transferred because Drax filed it in the wrong jurisdiction given a forum selection clause in the Separation Agreement. "Forum selection clauses in contracts are enforceable in federal courts." *P & S Bus. Machines, Inc. v. Canon USA, Inc.*, 331 F.3d 804, 807 (11th Cir. 2003) (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)). *See also Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 63 (2013). In a case asserted under the Court's diversity jurisdiction, the determination as to whether to enforce a forum selection clause is governed by federal law. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 32 (1988). "Forum-selection clauses are presumptively valid and enforceable unless the plaintiff makes a 'strong showing' that enforcement would be unfair or unreasonable under the circumstances." *Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009) (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593–95 (1991); *M/S Bremen*, 407 U.S. at 10).

The Non-Compete Agreement—executed in May 2016—contains a forum selection clause choosing the Northern District of Georgia—or an appropriate state

court in Fulton County, Georgia—as the exclusive venue for any dispute.[20] Conversely, the Separation Agreement—executed in May 2020—contains a forum selection clause choosing "the appropriate state or federal court for the district in Ouachita Parish, Louisiana" as the exclusive venue for any dispute.[21] Lamb argues for a dismissal or transfer because Drax filed this action in Georgia, not Louisiana.

As a threshold matter, "forum selection clauses are enforced either through a Rule 12(b)(3) motion for dismissal based on improper venue or through a motion to transfer to the proper venue pursuant to 28 U.S.C. § 1404(a)." *Jester v. Emerson Climate Techs., Inc.*, __ F. App'x __, No. 20-13147, 2021 WL 942781, at *3 (11th Cir. Mar. 12, 2021) (citing *Slater v. Energy Servs. Grp. Int'l, Inc.*, 634 F.3d 1326, 1332–33 (11th Cir. 2011)). However, federal courts routinely find that the appropriate procedural mechanism for enforcing a forum selection clause that requires litigation in a parallel federal court is a transfer under 28 U.S.C. § 1404(a), not outright dismissal under Rule 12(b)(3). *Digital Envoy, Inc. v. Google, Inc.*, 319 F. Supp. 2d 1377, 1379 (N.D. Ga. 2004). *See also Am. Spirit & Cheer Essentials, Inc. v. Varsity Brands, LLC*, No. 1:20-cv-03088-SCJ, 2020 WL 8115878, at *9 (N.D. Ga.

---

[20] ECF 1-1, at 8 § 6(b).

[21] ECF 7-2, at 10 § 17. The Court takes judicial notice that Ouachita Parish, Louisiana is located in the Monroe Division of the Western District of Louisiana. 20 U.S.C. § 98.

Oct. 27, 2020) ("When a forum selection clause would allow a transfer to a sister federal court, the court should transfer and not dismiss the case even if the clause would have allowed a party to have filed the case in the state court of the selected forum."); *Big Gates Mgmt. Grp. Int'l, LLC v. James*, No. 1:18-cv-3291-JPB, 2020 WL 4556139, at *1 (N.D. Ga. Apr. 20, 2020) ("Federal Rule of Civil Procedure 12(b)(3) is not the proper mechanism for enforcing a forum selection clause.") (citing *Atl. Marine*, 571 U.S. at 61). The Eleventh Circuit has traditionally only resorted to dismissal under Rule 12(b)(3) when the forum selection clause required litigation in a foreign county. *See, e.g., Hollis v. Fla. State Univ.*, 259 F.3d 1295, 1300 n.5 (11th Cir. 2001); *Lipcon*, 148 F.3d at 1290. Given the posture of this case, the Court will consider Lamb's request as a motion to transfer under 28 U.S.C. § 1404(a).

The next issue is which forum selection clause (if any) should control. This is a question for the Court to decide as a matter of law. *Asoma Corp. v. SK Shipping Co.*, 467 F.3d 817, 822 (2d Cir. 2006) ("Where . . . the two sides have put forth different contracts, each containing a forum selection clause designating a different forum, and the parties do not dispute the facts which gave rise to those two conflicting contracts, the court must decide as a matter of law on the agreed facts which forum selection clause governs."). In such cases, courts "often decline to enforce both clauses because of the waste of judicial and party resources" and

instead "undertake a 'fact-intensive' analysis to determine which clause should be enforced." *Fortune-Johnson, Inc. v. Master Woodcraft Cabinetry, LLC*, No. 1:15-cv-4123-SCJ, 2016 WL 3128536, at *3 (N.D. Ga. Feb. 3, 2016) (citing *Samuels v. Medytox Sols., Inc.*, No. CIV.A. 13-7212 SDW, 2014 WL 4441943, at *4 (D.N.J. Sept. 8, 2014); *Jones v. Custom Truck & Equip., LLC*, No. 3:10-cv-611, 2011 WL 250997, at *4 (E.D. Va. Jan. 25, 2011)). Recently, a court in the Northern District of Texas summarized relevant district court opinions and stated:

> In cases involving competing forum selection clauses, the analysis of which forum selection clause to enforce, or whether to enforce any at all, is dependent on the facts of the case. There is not a one size fits all analysis for this situation. A number of courts faced with multiple valid and conflicting clauses have simply selected one to enforce, looking to all the facts and circumstances of the case. The Court will take this approach.

*Bio World Merch., Inc. v. Interactive Bus. Info. Sys., Inc.*, No. 3:19-cv-2072-E, 2020 WL 6047605, at *4 (N.D. Tex. Oct. 9, 2020) (collecting cases).

The analysis in *Bio World* comports with the position taken by district courts in the Eleventh Circuit. *See, e.g.*, *Schrenkel v. LendUS, LLC*, No. 2:18-cv-382-FTM-29CM, 2018 WL 5619358, at *6 (M.D. Fla. Oct. 30, 2018) ("In determining which forum-selection clause to enforce, several courts (including this one) have examined the claims at issue to determine which contract, and therefore which forum-selection clause, applies."); *Blue Ocean Corals, LLC v. Phoenix Kiosk, Inc.*,

No. 14-CIV-61550, 2014 WL 4681006, at *7 (S.D. Fla. Sept. 19, 2014) ("[W]here parties have entered into multiple contracts with differing forum [ ] selection provisions governing the same transaction or relationship, a court must decide based on the particular facts which clause governs."). In a similar vein, other courts have emphasized that "[t]he central question is whether the later agreement contains a merger clause that designates it as the document that fully embodies the parties' rights and obligations." *Alfandary v. Nikko Asset Mgmt. Co.*, 337 F. Supp. 3d 343, 358 (S.D.N.Y. 2018).

In this case, an analysis of the two agreements and Drax's claims points toward the enforcement of the forum selection clause in the Separation Agreement. The gravamen of Drax's claims is that Lamb violated his non-compete restrictive covenant by joining Alabama Pellets. That non-compete is initially memorialized in the Non-Compete Agreement. However, the Separation Agreement expressly incorporates that post-employment obligation and restriction.[22] Indeed, Lamb again agreed that "for 6 months following the Separation date, you will refrain from certain . . . competitive activities as set forth in the [Non-Competition Agreement]."[23] The Separation Agreement also contains

---

22   ECF 7-2, at 7 § 7.

23   *Id.*

an explicit merger clause that "supersedes any prior agreements or understandings made by the parties."[24] Given this posture, the Court finds the mandatory forum selection clause in the Separation Agreement—choosing Louisiana as the venue for any disputes between the parties—should apply.

The final step is to analyze the factors in 28 U.S.C. § 1404(a). According to this statute, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." *Id.* Generally, the Eleventh Circuit considers nine factors in evaluating a motion to transfer under § 1404(a). *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005). However, the presence of a valid and enforceable forum selection clause modifies this standard; the Court must "afford no weight to either the plaintiff's selected forum or the parties' private interests, and [ ] ignore the choice-of-law rules of the original venue." *Hisey v. Qualtek USA, LLC*, 753 F. App'x 698, 703 (11th Cir. 2018). *See also Atl. Marine*, 571 U.S. at 64 ("[A] district court may consider arguments about public-interest factors only. Because those factors will

---

[24]   *Id.* at 10 § 16.

rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases.").

Drax does not point to any public interest factors weighing against transferring this case to Louisiana. A review of the pleadings demonstrates that Georgia seemingly has little-to-no connection to this case. None of the parties are citizens of, or reside in, Georgia. The only events that allegedly transpired in Georgia are that, until his transfer to Louisiana on August 21, 2018, "Lamb's position at Drax required him to travel frequently to Georgia to conduct needed business."[25] This falls far short of the "extraordinary circumstances" needed to overcome a valid forum selection clause. Therefore, the Court finds this case should be transferred to the appropriate Louisiana district court. The Court declines to reach the merits of Lamb's third argument and expressly reserves the issue of whether Lamb's non-compete is enforceable for the transferee court.

---

[25] ECF 1, ¶ 10.

### III. CONCLUSION

Lamb's motion to transfer [ECF 7] is **GRANTED**. The Clerk is **DIRECTED** to transfer this case to the Monroe Division of the Western District of Louisiana.

**SO ORDERED** this the 16th day of April 2021.

Steven D. Grimberg
United States District Court Judge